## GREEN v. OEMLER.

(Circuit Court, E. D. Georgia, S. D. February 12, 1907.)

COURTS—JURISDICTION OF FEDERAL COURT—FEDERAL QUESTION.

    A bill alleging that complainant leased a certain oyster bed from the state for a term of years pursuant to a state law, and planted the same, but that by a subsequent act of the Legislature the state undertook to transfer the property in such beds to the owners of the adjacent land, and that defendant, claiming under such law, has excluded complainant from said leased property, and which seeks injunctive relief, states a case which presents a constitutional question of the impairment of a contract by the state, and is within the jurisdiction of a federal court.

    [Ed. Note.—Jurisdiction of federal courts in cases involving federal questions, see note to Bailey v. Mosher, 11 C. C. A. 308; Montana Ore-Purchasing Co. v. Boston & M. Consol. Copper & Silver Min. Co., 35 C. C. A. 7.]

In Equity. On demurrer to bill.

Travis & Travis, for complainant.

Osborne & Lawrence, for defendant.

SPEER, District Judge (orally). This bill alleges that the property in dispute lies below low-water mark in an arm of the ocean, where the tide regularly ebbs and flows, and that it belonged to the state of Georgia. It further alleges that on the 6th day of April, 1901, Anthony Green, who, it seems from the statement of counsel, is a colored man, obtained from the county commissioners of Chatham county a lease for the period of 20 years, with the privilege of renewal for 30 years more, covering five acres of land under water in said county, more particularly described as follows: "Five acres in Rhodes or Sandy Bottom creek, on the southern shore of said creek, beginning at a point on low-water mark, * * * etc." The board of county commissioners of Chatham county is created by state legislation, and is therefore an instrumentality or agency of the state, through which its power and title is made operative and effective under the provisions of the original law under which Anthony claims. He alleges that he recorded his lease in the book of oyster leases in the office of the superior court of the county, conformably to law, and that he planted on his leased territory 100 bushels of oyster shells per acre. This planting was done on one-tenth of this territory during the planting seasons of the years 1901 and 1902. It appears also from the statements of counsel that all that is necessary to propogate the oyster is to plant shells of a certain virile and vigorous character—even though, I believe, it be only a half a shell—and the oyster proceeds to multiply and replenish the earth, or the waters under the earth, in accordance with the scriptural injunction in that behalf expressed. He also alleges that he paid to the state of Georgia through

the commissioners of roads and revenues a valuable consideration for the property thus acquired. It further appears that subsequently, namely, on December 16, 1902, which was more than a year after Anthony's lease and some time subsequent to his planting, the state of Georgia enacted a law, undertaking to transfer from Anthony the property vested in him as described, and to grant it to the owner of the adjacent land. This is entitled "An act to fix and prescribe the boundaries of land adjacent to, or covered by, or bordering on the tide waters of this state; and to prescribe all right of the owners of such adjacent land within such boundaries; and to define navigable tide waters, and for other purposes."

Now, Oemler, the defendant, took a lease from one Parsons, who, it is alleged, is the owner, or claims to be the owner of the adjacent land, and, acting, therefore, under the authority and by virtue of the title of the second grant issued by the state, Oemler has proceeded to make life very unhappy for Anthony so far as oyster culture is concerned. He has prevented Anthony, either in person or by its agents, "from entering upon his leased territory, or from gathering oysters therefrom, or from planting oysters thereon, and maintaining stakes erected as aforesaid, or in any other manner exercising his rights of said leased territory under the law." This obstruction has gone to the extent that Anthony's life would be imperiled should he attempt to enter thereon. Not only does Oemler do this himself, as alleged, but he has an agent named Liche Red, who it seems, as Copperfield said of Micawber, has a "bold and buccaneering manner, not absolutely lawless, but prompt and defiant." And Liche also uses force of arms and threatens intimidation contrary to the specific provisions of the law. Oemler maintains Liche Red on guard on Long Island near said property for the purposes of intimidation, and will continue to take oysters from that territory unless he is restrained by the court. These are the averments of Anthony Green. He alleges that he is without adequate remedy at law, that he cannot compute his damages by reason of the fact that oysters are a growing commodity, and the amount of damages is largely dependent upon the amount of oysters planted, and no means are available for ascertaining how many oysters are taken by Oemler from that territory. He therefore prays an injunction, commanding Oemler to absolutely desist and refrain from picking oysters from his territory, and for general relief.

The bill is demurred to upon the ground, as I understand, that it does not present a federal question, and the court is obliged to presume that the courts of the state will hold that the act will have merely a prospective and not a retrospective operation. It seems also from the arguments of counsel that the question has never been properly raised before the Supreme Court of the state. It seems to me that this does present a federal question. The Constitution provides that no state shall pass any ex post facto law or any law impairing the obligation of a contract. Here the question is whether the second grant is a law impairing the obligation of Anthony's contract. He alleges that his was a contract made with the state, that he paid the state for it through its agents, the board of commissioners of Chatham county. He went forward, made valuable expenditures, and planted

shells in various fructifying localities. Then the next session of the Legislature proceeds to take away the right of Anthony, and places it in the adjoining owner. The state gives, and the state takes away, but Anthony does not exclaim, "Blessed be the name of the state," but comes into court and insists that its act is unconstitutional. As there is a federal question involved, the court must exercise its power in favor of poor Anthony just as much as if he were one of the magnates of the land.

I think, therefore, the demurrer must be overruled, and the case go on for trial on its merits.